IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES DAVIS,**<br>           **Plaintiff,**<br><br>           v.<br><br>**THE CONTRACTORS ASSOCIATION**<br>**OF EASTERN PENNSYLVANIA,**<br>           **Defendant.** | CIVIL ACTION<br><br><br><br>NO.  25-1070 |

## MEMORANDUM OPINION

Plaintiff James Davis sued his employer, the Contractors Association of Eastern Pennsylvania ("Defendant" or "Contractors Association"), alleging that he was discriminated against, subjected to a hostile work environment, and retaliated against on account of his age and sexual orientation in violation of the Philadelphia Fair Practices Ordinance, Phila. Code. § 9-1100 *et. seq.* ("PFPO").[1]  Defendant now moves to strike Paragraph 35 of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)").  For the reasons set forth below, the Motion shall be granted in part.

   **I.     LEGAL STANDARD**

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

---

[1] Plaintiff also brought age- and sexual orientation-based discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.* ("ADEA"); and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et. seq.* ("PHRA").  Following a period of jurisdictional discovery, Defendant moved for partial summary judgment on those claims (Counts I, II, and III of the Complaint, respectively) pursuant to Federal Rule of Civil Procedure 56.

The parties agree that because the Contractors Association employs only three employees, it does not meet the statutory threshold for employee-numerosity required by Title VII, the ADEA, and the PHRA.  As such, Plaintiff has voluntarily withdrawn Counts I, II, and III from this action.  The Court retains subject matter jurisdiction over Plaintiff's PFPO claim pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, and thus has jurisdiction over this matter.

unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware*, 244 F. Supp.2d 393, 402 (E.D. Pa. 2002); *Dann v. Lincoln Nat. Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011) (explaining that "Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law" (citations and internal quotation marks omitted)). "Immaterial matter is that which has no essential or important relationship to the claim for relief," while "[s]candalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action." *Lawson v. City of Coatesville*, 2012 WL 4596129 at *6 (E.D. Pa. Aug. 29, 2013) (quoting *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp.2d 623, 633 (M.D. Pa. 2009)).

Courts possess "considerable discretion" in disposing of motions to strike. *Adams v. Cnty. of Erie, Pa.*, 2009 WL 4016636 at *1 (W.D. Pa. Nov. 19, 2009). That said, they are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale v. Winthrop Res. Corp.*, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (citation omitted); *see also Kaetz v. Wolfson*, 2022 WL 4115505, at *1 n.2 (3d Cir. Sept. 9, 2022). Striking some or all of a pleading is therefore considered "a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 428 (E.D. Pa. 2007) (citation modified).

## II.   DISCUSSION

Defendant moves to strike certain factual allegations set forth in the Complaint pursuant to Rule 12(f), arguing that Plaintiff included "immaterial, impertinent, scandalous" information, "designed to prejudice the [Contractors Association]." Specifically, it moves to strike Paragraph 35, reproduced here:

> In February 2022, during a phone call with Plaintiff and Attorney McGoldrick, Anthony Seravalli unleashed a barrage of hateful slurs towards City officials implementing [the Transparency in Business Act], calling them "nigger cunts" and "faggots," and expressing fear that his payments on City contracts would be delayed. Plaintiff was appalled by the brazen nature of this racist and homophobic language.

Defendant argues that Plaintiff's allegation in Paragraph 35—specifically that Anthony Seravalli, a voting member of the Contractors Association's Board of Directors, uttered a racial slur towards Philadelphia city officials—is completely unrelated to Plaintiff's claims of age- and sexual orientation-based discrimination. Conversely, Plaintiff contends that Paragraph 35 is necessary because the racist epithet made by Seravalli—that is, calling Philadelphia city officials "nigger cunts"—"underscores the broader discriminatory atmosphere within [the Contractors Association]" and "emphasizes the extent of bias entrenched in [the Contractors Association's] leadership."

Plaintiff relies on *Giuliani v. Polysciences, Inc.*, 275 F. Supp.3d 564 (E.D. Pa. 2017), in making this argument. In *Giuliani*, a former employee brought an age discrimination claim against his employer, alleging that the employer had discriminated against him based on his age. In his complaint, the plaintiff included assertions that his employer had also discriminated against female employees because of their gender and chose to do or not do business with specific individuals and businesses based on their political opinions. *Giuliani*, 275 F. Supp.3d at 572-73. The defendant moved to strike those allegations. *Id.* at 572. The District Court found that, because the challenged allegations involved discrimination against individuals in protected classes to which the plaintiff did not belong, "[those] facts would do nothing more than prejudicially paint defendant as a generally discriminatory and morally deficient employer." *Id.* at 574. As a result, the Court granted the defendant's motion to strike, on grounds that the allegations "involve[d] 'forays into immaterial matters' that 'may cause prejudice to one of the

parties' or otherwise 'confuse the issues in the case.'"  *Id.* (quoting *McInerney*, 244 F. Supp.2d at 402, and *River Road Dev. Corp. v. Carlson Corp.*, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

While "evidence regarding an employer's 'culture' in which it makes employment decisions may constitute circumstantial evidence of discrimination," *id.* at 573 (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3d Cir. 1995)), that is so only when such evidence is relevant to the particular kind of discrimination alleged by a plaintiff.  *See id.* at 574; *Lawson*, 2013 WL 4596129, at *6 (finding that allegations of sexual misconduct by officers of a police department were scandalous and immaterial to plaintiff's claim that his unlawful arrest was motivated by racial discrimination).  Here, Seravalli's alleged racist remarks have no bearing on Plaintiff's claims of age- and sexual orientation-based discrimination, hostile work environment, or retaliation, and are therefore immaterial.  *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) (finding that derogatory comments directed at other employees could not form the basis of a plaintiff's hostile work environment claim because they were not targeted at his protected status).  Furthermore, the nature of the language and the fact that the subject of the hateful remarks were public officials is likely to cast the Contractors Association in a derogatory light, making such an allegation prejudicial.  As a result, the racist comments will be stricken.

However, while Defendant asks that the entirety of Paragraph 35 be stricken, it does not address Seravalli's alleged use of the slur "faggots" to describe the Philadelphia city officials implementing the Transparency in Business Act.  Plaintiff claims that the Contractors Association violated the PFPO by discriminating against him on the basis of his sexual orientation (gay).  Plaintiff asserts that Seravalli's use of the term "faggot" is "directly relevant to Plaintiff's experience of discrimination."  Indeed, discriminatory remarks by leaders in a

corporate hierarchy may be used as evidence of discriminatory employment practices. *See, e.g.*, *Brewer*, 72 F.3d at 333-34 (holding that, in age discrimination case, a CEO's age-related statements in a company newsletter could be considered "as evidence of the corporate culture in which the employment decision to discharge [plaintiff] was made"). Furthermore, there is no question that the term "faggot" is offensive and derogatory, and used to abuse and disparage gay people. *See Angelis v. Philadelphia Hous. Auth.*, 2024 WL 643142, at *8 (E.D. Pa. Feb. 15, 2024) (finding that use of the word "faggot," among other derogatory comments directed at plaintiff by co-workers, supported plaintiff's allegations of discrimination on the basis of sexual orientation). Because Plaintiff brings a claim of discrimination based on his sexual orientation, the Court will not strike the allegation about Seravalli's use of the word "faggot."

Consistent with this determination, Paragraph 35 shall now read as follows:

> In February 2022, during a phone call with Plaintiff and Attorney McGoldrick, Anthony Seravalli unleashed a barrage of hateful slurs towards City officials implementing TIB, calling them "faggots," and expressing fear that his payments on City contracts would be delayed. Plaintiff was appalled by the brazen nature of this homophobic language.

An appropriate order follows.

**BY THE COURT:**

/s/ Wendy Beetlestone

**WENDY BEETLESTONE, C.J.**